UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES D. "BUDDY" CALDWELL,          CIVIL ACTION NO. 6:12-cv-00443
ATTORNEY GENERAL *ex rel*,
STATE OF LOUISIANA

VERSUS                               JUDGE MINALDI

BRISTOL MYERS SQUIBB                 MAGISTRATE JUDGE HANNA
SANOFI PHARMACEUTICALS
HOLDING PARTNERSHIP, ET AL.

## REPORT  AND  RECOMMENDATION

Before the undersigned, on referral from the district judge, is the motion to remand (Rec. Doc. 7), which was filed by the plaintiff, James D. "Buddy" Caldwell, the Attorney General of the State of Louisiana, on behalf of the State of Louisiana. The motion is opposed by the removing defendants.  For the reasons set forth below, it is recommended that the motion be GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was originally filed in the 27th Judicial District Court, St. Landry Parish, Louisiana.  In the suit, the Louisiana state attorney general sued certain pharmaceutical companies who allegedly manufacture the prescription drug Plavix and three sales representatives who allegedly market Plavix.  The attorney general

alleges that the defendants used false and misleading advertising to promote the sale of Plavix, resulting in the state's purchase of Plavix for Medicaid recipients to whom the drug should not have been prescribed.  More particularly, the attorney general alleges that the defendants made material, false, and deceptive representations that proximately caused injury to the state of Louisiana.  The attorney general seeks to recover under two Louisiana statutes, the Medical Assistance Programs Integrity Law ("MAPIL"), La. R.S. 46:437.1 *et seq*. and the Unfair Trade Practices and Consumer Protection Law ("LUTPCPL"), La. R.S. 51:1401 *et seq*.  The suit does not seek recovery under any federal statutes, and the suit is not styled as a class action.

The defendants removed the suit to this forum, alleging three independent bases for the court's subject matter jurisdiction:  diversity jurisdiction, federal question jurisdiction, and jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Rec. Doc. 1).  In response to the removal notice, the plaintiff filed the instant motion to remand.

## ANALYSIS

Federal courts exercise limited jurisdiction.[1]  For that reason, a suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court

---

[1]     *Howery v. Allstate Ins. Co*., 243 F.3d 912, 916 (5th Cir. 2001).

jurisdiction establishes otherwise.[2]   Any doubts regarding whether removal jurisdiction is proper should be resolved against federal-court jurisdiction.[3]   The party invoking the court's subject matter jurisdiction has the burden of establishing the court's jurisdiction.[4]  When a lawsuit has been removed from state court, as this suit has, the removing party must bear that burden.[5]  Accordingly, the defendants, as the removing parties, have the burden of establishing that this court has jurisdiction.

## I.   DIVERSITY

To remove a case based on diversity jurisdiction, a defendant must demonstrate "that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[6]  Thus, the amount in controversy must exceed $75,000 and the parties

---

[2]     *Howery v. Allstate*, 243 F.3d at 916.

[3]     *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[4]     *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253-54 (5th Cir. 1998).

[5]     *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005); *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008).

[6]     *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

must be diverse in citizenship.[7]  In this case, the defendants contend that these criteria are satisfied, while the plaintiff argues that diversity jurisdiction does not exist.

In their removal notice, the defendants set forth information regarding the citizenship of each of the parties to the lawsuit.  They claim that the plaintiff is diverse in citizenship from the corporate defendants and that the citizenship of the three individual defendants may be disregarded because they were fraudulently joined as defendants in the lawsuit.

The plaintiff in this lawsuit is Buddy Caldwell, the attorney general of the State of Louisiana, acting in his official capacity as the representative of the state. Accordingly, the nominal plaintiff in the suit is the state of Louisiana.  If the state is the real party in interest, this suit cannot be removed on the basis of diversity because it is well established that a state is not a citizen for purposes of diversity jurisdiction.[8] Consistently, if an agency that is merely the alter ego of the state is a party to a suit, federal jurisdiction is lacking; on the other hand, however, if the agency is an independent one, separate and distinct from the state, a federal court will have subject

---

[7]      28 U.S.C. § 1332.

[8]      See, e.g., *Melder v. Allstate Corp.*, 404 F.3d 328, 335 (5th Cir. 2005) ("The law is settled that in an action where a state is a party . . . a state is not a citizen for purposes of diversity jurisdiction."); *Texas Dep't of Housing and Community Affairs v. Verex Assur., Inc.*, 68 F.3d 922, 926 (5th Cir. 1995); *Tradigrain, Inc. v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir. 1983), citing *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction.").

matter jurisdiction if the parties are diverse in citizenship and the amount in controversy exceeds the statutory minimum.[9]

To overcome this obstacle to diversity jurisdiction, the defendants contend that the State of Louisiana is not the real party in interest in this lawsuit. They contend, instead, that Louisiana's Department of Health and Hospitals ("DHH") is the real party in interest, and that DHH is an independent agency, which is separate from the state and a citizen of the state of Louisiana, whose citizenship may be used in the diversity calculation.

The jurisprudence is clear, however, that DHH is an arm or alter ego of the state.[10] Therefore, even if, as the defendants suggest, DHH were the real party in interest, its presence as a party to the lawsuit would preclude diversity of citizenship as a basis for federal jurisdiction over this action.

The defendants attempt to distinguish some of the cases finding that DHH is an arm of the state, noting that they are grounded on Eleventh Amendment principles

---

[9]    *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1416 (5th Cir. 1996); *Tradigrain*, 701 F.2d at 1132.

[10]    *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987); *Woods v. G.B. Cooley Hospital for Retarded Citizens*, No. 07-0926, 2007 WL 2847532, *3 (W.D. La. Aug. 22, 2007); *Beyard v. Caddo Parish Commission*, No. 06-2296, 2007 WL 1741970, at *2 (W.D. La. Apr. 27, 2007); *Batton v. Georgia Gulf*, 261 F.Supp.2d 575, 596 (M.D. La. 2003); *Johnson v. Easley*, No. 01–3325, 2003 WL 203103, at *2 (E.D. La. Jan. 29, 2003); *Kurkiewicz v. State of Louisiana*, 560 F.Supp. 911, 913 (M.D. La. 1983).

that apply only when the state or its alter ego is a defendant in a lawsuit.  This confuses two separate concepts.  Although the determination of whether an agency is an alter ego of the state or an independent agency is based on an analysis virtually identical to that used to determine whether an agency is an arm of the state for Eleventh Amendment purposes,[11] the issue here is not whether DHH has Eleventh Amendment immunity but whether DHH's status as an arm of the state precludes diversity jurisdiction.

When this same issue was before the court in another lawsuit, the court recognized that DHH is an arm of the state[12] and further recognized that the presence of DHH as a defendant in the suit precluded diversity jurisdiction.[13]  No different rule is applied when the state or an arm of the state is the plaintiff in a lawsuit.  In fact, "[t]his rule extends to cases in which the state is one of multiple plaintiffs or defendants and there is diversity among the parties who are citizens."[14]  Whether the state or state agency is a plaintiff or a defendant is immaterial.  In either case, the presence of the state or an arm of the state as a plaintiff or a defendant precludes the

---

[11]     *Tradigrain*, 701 F.2d at 1132.

[12]     *Batton*, 261 F.Supp.2d at 594.

[13]     *Batton*, 261 F.Supp.2d at 596.

[14]     *Bullock v. Smith*, No. 08-cv-1333, 2008 WL 4853355, at *2 (W.D. La. Nov. 7, 2008), citing *Batton*, 261 F.Supp.2d at 582.

applicability of diversity jurisdiction because a state is not a citizen of any state for diversity purposes.

In *Louisiana v. Union Oil Company of California*,[15] for example, the State of Louisiana and the Vermilion Parish School Board sued various oil companies in connection with oil and gas exploration activity on Section 16 lands.   Unocal removed the suit to federal court on the basis of diversity.  The School Board sought remand, arguing that there was no diversity because the state was a plaintiff.  The Fifth Circuit noted that a state is not a citizen for diversity purposes but allowed that if the state is a nominal party with no real interest in the dispute, its citizenship may be disregarded.[16]  The court found that the state owned the land on which the mineral exploration had been conducted, and concluded "that the State of Louisiana is a real party in interest in this suit, the presence of which defeats diversity jurisdiction."[17] Accordingly, the undersigned finds that regardless of whether a state is a plaintiff or a defendant in a lawsuit, it is not a citizen for diversity purposes.

It is not necessary to determine whether DHH or the State of Louisiana is the actual party in interest in this lawsuit.  In either case, diversity is destroyed because

---

[15]     458 F.3d 364 (5th Cir. 2006).

[16]     *Louisiana v. UNOCAL*, 458 F.3d at 366.

[17]     *Louisiana v. UNOCAL*, 458 F.3d at 367.

neither DHH (the state's alter ego) nor the state itself is a citizen as that term is used in 28 U.S.C. § 1332(a) with regard to subject-matter jurisdiction.  The presence of either the State of Louisiana or DHH as the plaintiff in this lawsuit precludes diversity of citizenship as a  basis for subject matter jurisdiction over this action.

The undersigned finds that the defendants have failed to carry their burden of establishing that this court has jurisdiction over this action based on the diversity of the parties.  Consequently, it is unnecessary to (1) examine the citizenship of the defendants to determine whether there is complete diversity of citizenship between the plaintiff and the defendants, (2) determine whether the amount in controversy exceeds the jurisdictional threshold; or (3) resolve whether the individual defendants were fraudulently joined.  Further discussion of those issues is pretermitted.

## II.   <u>CAFA</u>

This is a *parens patriae* lawsuit, brought by Louisiana's attorney general, who has statutory and constitutional authority to bring such lawsuits.[18]  The defendants contend that subject matter jurisdiction exists under CAFA.  Although this lawsuit is not pleaded as a class action, the defendants argue that it is either a class action or a mass action under CAFA and should be treated as such because "courts look to the

---

[18]     *Louisiana ex rel. Caldwell v. Allstate Ins. Co*., 536 F.3d 418, 428 (5th Cir. 2008).

substance and not just the form in which an action is pleaded to determine whether a case is removable under CAFA."[19]  The defendants argue that courts, including the Fifth Circuit Court of Appeals, "have routinely held that *parens patriae* actions brought by attorneys general are class actions or mass actions and therefore are removable under CAFA."[20]  The plaintiff argues, however, that this lawsuit was improperly removed under CAFA because it does not meet CAFA's definition of a class action or its definition of a mass action.[21]

CAFA defines the term "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."[22]  Additionally, a CAFA class action must have at least one hundred class members, the parties must be minimally diverse, and the amount in controversy must exceed $5 million.[23]  The plain language of the statute requires that, in order for an action to be a class action under CAFA, it must be pleaded as a class action under

---

[19]    Rec. Doc. 20 at 25, citing *Louisiana v. Allstate Ins. Co.*, 536 F.3d at 424 ("federal courts look to the substance of the action and not only at the labels that the parties may attach.")

[20]    Rec. Doc. 20 at 25-26.

[21]    Rec. Doc. 7-1 at 28.

[22]    28 U.S.C. § 1332(d)(1)(B).

[23]    28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1332(d)(2)(A) - (C); .28 U.S.C. § 1332(d)(5)(B).

a state or federal class action statute.  As noted with regard to the Vioxx litigation, which is similar in several respects to this lawsuit:

> Congress chose to define "class action" not in terms of joinder of individual claims or by representative relief in general, but in terms of the statute or rule the case is filed under. . . . This is a statutory requirement; no amount of piercing the pleadings will change the statute or rule under which the case is filed.[24]

Because no class action statute was implicated in the Vioxx decision, the court said: "The plain reading of the statutory definition of 'class action' necessarily excludes this case."[25]  It also said:  "If this is a formalistic outcome, it is a formalism dictated by Congress.  Moreover, it is an understandable bright-line rule."[26]

Although the Fifth Circuit has not yet squarely addressed this issue, the defendants suggest that a district court case from West Virginia, *West Virginia ex rel. McGraw v. Comcast Corp.*[27] and the Fifth Circuit's ruling in *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*[28] mandate a contrary result.  In fact, however, neither of those cases support the defendants' position.

---

[24]     *In re Vioxx Products Liability Litigation*, No. 10-1115, 2012 WL 10552, at *8 (E.D. La. Jan. 3, 2012).

[25]     *In re Vioxx*, 2012 WL 10552, at *8.

[26]     *In re Vioxx*, 2012 WL 10552, at *8.

[27]     705 F.Supp.2d 441, 452 -453 (E.D. Pa. 2010).

[28]     536 F.3d 418 (5th Cir. 2008).

In *Allstate*, the court did not hold that the *parens patriae* case brought by Louisiana's Attorney General at issue in that case was a class action removable under CAFA.  Instead, it held that because the true parties in interest were certain insurance policyholders who were to be added to the lawsuit by the district court after remand, it was a mass action under CAFA.  The court expressly did not "address whether this lawsuit could . . . properly proceed as a class action under CAFA."[29]

In *Comcast*, the court held that the state statute under which the suit was brought was "sufficiently similar to federal Rule 23 to meet CAFA's requirement for class actions."[30]  Thus, *Comcast* is consistent with the ruling in *Vioxx*, which held that a state-court action is removable as a CAFA class action only when it meets the "understandable bright-line rule" that it be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure."

Another consistent ruling was issued very recently by the Southern District of Mississippi.   That court determined that a *parens patriae* suit brought by Mississippi's Attorney General, alleging that the defendants engaged in price fixing in violation of the Mississippi Consumer Protection Act, "is not a CAFA class action because it was not brought pursuant to Federal Rule of Civil Procedure 23 or a

---

[29]     *Louisiana v. Allstate*, 536 F.3d at 430.

[30]     *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F.Supp.2d 441, 452-53 (E.D. Pa. 2010).

'similar State statute or rule of judicial procedure,'"[31] noting that "[n]one of the state laws under which this action was brought impose class action-like requirements of adequacy, numerosity, commonality, or typicality, nor is the Attorney General, with his distinct duties, powers, and interests, a typical class representative."[32]

Federal appellate courts other than the Fifth Circuit have reached that same conclusion.  In finding that the district court had correctly determined that the *parens patriae* case under review was not a class action under CAFA, the Seventh Circuit stated:

> A class action must be brought ***as a class action***.  This case was brought as a *parens patriae* suit under [a state statute], which does not impose any of the familiar Rule 23 constraints.  The [statute] does not impose, for example, requirements for adequacy, numerosity, commonality, or typicality.  Procedurally, Rule 23 and the [the statute] are entirely different beasts.[33]

The Fourth Circuit has similarly held that "[b]ecause this action was brought by the State under state statutes that are not 'similar' to Federal Rule of Civil Procedure 23,

---

[31]     *Mississippi ex rel. Hood v. AU Optronics Corp.*, No 3:11-CV-345-CWR-FKB, 2012 WL 1575629, at *9 (S.D. Miss. May 3, 2012).

[32]     *Mississippi v. AU Optronics*, 2012 WL 1575629, at *9.

[33]     *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011) (emphasis in original).

we conclude that it is not removable under CAFA as a class action."[34]  In remanding

a *parens patriae* suit, the Ninth Circuit consistently stated:

> There is no ambiguity in CAFA's definition of class action. CAFA defines the term class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." . . .  Under this definition, a suit commenced in state court is not a class action unless it is brought under a state statute or rule similar to Rule 23 that authorizes an action "as a class action."[35]

The court noted that the *parens patriae* action at issue was brought under statutes that

did not "contain the typical class action requirements of showing numerosity,

commonality, typicality, or adequacy of representation"[36] and that the governmental

official who brought the action was not a member of the class, raising the possibility

that "his role as a protector of the public may be inconsistent with the welfare of the

class so that he could not adequately protect their interests."[37]  The court also noted

that recovery in a *parens patriae* suit might result in penalties paid to the state

---

[34]    *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc*., 646 F.3d 169, 172 (4th Cir. 2011).

[35]    *Washington v. Chimei Innolux Corp*., 659 F.3d 842, 848 (9th Cir. 2011).

[36]    *Washington v. Chimei*, 659 F.3d at 848.

[37]    *Washington v. Chimei*, 659 F.3d at 848, quoting *People v. Pacific Land Research Co*., 20 Cal.3d 10, 141 Cal.Rptr. 20, 569 P.2d 125, 129 (1977) (citations and footnotes omitted).

treasury rather than restitution paid to individuals, highlighting "the great distinction between a *parens patriae* lawsuit and a true class action."[38]  Thus, the mere fact that a *parens patriae* action is a representative action does not mean that it is a class action.  "The question under CAFA is whether the state statute authorizes the suit 'as a class action.'"[39]

As noted previously, the instant lawsuit was not expressly brought as a class action but was, instead, brought under two Louisiana statutes, MAPIL and LUTPCPL, which authorize the state attorney general to institute litigation to protect the interests of the state and its citizens.  Although LUTPCPL may authorize the attorney general to bring a class action as part of his enforcement authority, as suggested by the defendants, the attorney general did not do so in this case.  In *State ex rel. Guste v. General Motors*,[40] the case relied upon by the defendants in making this argument, the suit was styled as a class action, brought under Louisiana's class action statutes, and certification of a plaintiff class was sought but denied.  In the instant case, however, the attorney general took a different route and did not bring the

---

[38]     *Washington v. Chimei*, 659 F.3d at 848.

[39]     *Washington v. Chimei*, 659 F.3d at 848.

[40]     370 So.2d 477 (La. 1978).

suit as a class action.  Accordingly, this lawsuit does not satisfy CAFA's definition of a class action.

The undersigned finds that this action brought by Attorney General Caldwell with regard to the marketing of Plavix in the State of Louisiana was neither brought as a class action nor brought under a statute that is sufficiently similar to Rule 23 or to Louisiana's class action statute, Louisiana Code of Civil Procedure Articles 591 through 593, to qualify the suit as a class action under CAFA.

This lawsuit is also very different from that presented in *Allstate*, which the Fifth Circuit found to be a mass action under CAFA.  CAFA defines a mass action as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact,"[41] subject to certain exceptions.  Here, there are no identifiable persons at interest other than the state.  There are no persons who paid premiums or purchased medications to whom damages might be owed if the Attorney General is successful in the litigation.  Instead, any misrepresentations by the defendants that resulted in the prescription of Plavix to persons who should not have received that drug caused money to be paid by the state on behalf of its Medicaid recipients and would require an award only to the state and not to any individuals.

---

[41]     28 U.S.C. § 1332(d)(11)(B)(I).

In addition to seeking "actual damages for monies paid that would otherwise not have been paid had defendants promoted, marketed[,] and sold Plavix® in compliance with the law and for approved purposes,"[42] the plaintiff in this lawsuit seeks the imposition of civil penalties and the recovery of attorney's fees, costs, and expenses under MAPIL[43] and civil penalties under LUTPCPL,[44] remedies that are not available to private citizens.  Accordingly, even without resort to the exceptions to the statutory definition of a mass tort, the undersigned finds that this lawsuit is not a mass action as that term is defined in CAFA.

Having found that this action is neither a class action nor a mass action as defined in CAFA, the undersigned further finds that the defendants have failed to carry their burden of establishing that this court has jurisdiction over this action based on CAFA.

## III.   FEDERAL QUESTION

The defendants' final contention in opposition to the plaintiff's motion to remand is that subject matter jurisdiction exists because the plaintiff's MAPIL claim

---

[42]      Rec. Doc. 1-1 at 20.

[43]      Rec. Doc. 1-1 at 20.

[44]      Rec. Doc. 1-1 at 24.

presents a federal question.[45]  Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[46] Therefore, a defendant may remove a case to federal court based on the presence of a federal question when a plaintiff asserts a claim or right arising under the Constitution or under the treaties or laws of the United States.[47]  Whether a claim arises under federal law so as to confer federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[48]  Under the well-pleaded complaint rule, "there is generally no federal jurisdiction if the plaintiff properly pleads only a state law cause of action."[49]

In the complaint, recovery is sought under two Louisiana statutes, the Medical Assistance Programs Integrity Law ("MAPIL"), La. R.S. 46:437.1, *et seq.*, and the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPCPL"), La. R.S. 51:1401, *et seq.*  The complaint states that the suit is "based entirely on State

---

[45]     28 U.S.C. § 1331.

[46]     28 U.S.C. § 1331.

[47]     *Hot-Hed*, 477 F.3d 320, 323 (5th Cir. 2007).

[48]     *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  See, also, *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

[49]     *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002).  See, also, *Saadat v. Landsafe Flood Determination, Inc.*, 253 Fed. App'x 343, 344 (5th Cir. 2007).

Law."[50]  Expressly, the "State of Louisiana is not seeking any remedy under any Federal Statute or Regulation."[51]

The defendants argue, however, that the plaintiff's MAPIL claim turns on substantial dispositive questions of the federal law sufficient to support federal question jurisdiction.[52]  Federal question jurisdiction may exist where "the vindication of [the subject state law cause of action] necessarily turn[s] on some construction of federal law."[53]  It is clear, however, that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction" over an action.[54]

In support of their argument, the defendants rely upon *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*[55]  Under *Grable*, "a federal court ought to be able to hear claims recognized under state law that nonetheless turn

---

[50]     Rec. Doc. 1-1 at 4.

[51]     Rec. Doc. 1-1 at 4.

[52]     The defendants do not argue that this Court has federal question jurisdiction over the plaintiff's LUTPCPL claim.

[53]     *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983); see also *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

[54]     *Willy v. Coastal Corp.*, 855 F.2d 1160, 1168 (5th Cir. 1988), citing *Merrell Dow*, 478 U.S. at 813.  See, also, *MSOF v. Exxon*, 295 F.3d at 491 (finding no federal question jurisdiction where "[t]he vindication of . . . plaintiffs' rights does not turn on resolution of a federal question.")

[55]     545 U.S. 308 (2005).

on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues. . . ."[56] In *Grable*, the United States Supreme Court formulated the relevant inquiry as follows:  "Does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?"[57]

In response to the *Grable* decision, the Fifth Circuit articulated a four-part test for determining whether a federal issue embedded in a state-law cause of action will confer federal-question jurisdiction.  Federal-question jurisdiction is appropriate when:  (1) resolving the federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.[58]  The question to be resolved is whether, under this test, the federal-law issue presented here is sufficient to establish federal-question jurisdiction.

Courts have been reluctant to find federal-question jurisdiction when it is alleged that a federal statute was violated but there is no dispute as to the meaning of

---

[56]     *Grable*, 545 U.S. at 312.

[57]     *Grable*, 545 U.S. at 314.

[58]     *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

the statute itself.  In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*,[59] for example, the Supreme Court declined to find federal-question jurisdiction in a "state tort claim resting in part on the allegation that the defendant drug company had violated a federal misbranding prohibition and was presumptively negligent under Ohio law."[60] This is easily contrasted with *Grable*, where there was a dispute as to the meaning of a federal statute.  There, the court said:  "The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."[61]

Just a year after *Grable* was decided, the Supreme Court distinguished *Grable* in *Empire Healthchoice Assurance, Inc. v. McVeigh*.[62]  In that case, the health insurer for federal employees sued to recover health insurance benefits it had paid to a federal employee because the employee had recovered damages for his injuries in a state court tort action.  The insurer's claim arose under state contract law, but the insurer noted that the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, and FEHBA was a necessary element of the insurer's claim.  The court

---

[59]   478 U.S. 804 (1986).

[60]   *Grable*, 545 U.S. at 316.

[61]   *Grable*, 545 U.S. at 315.

[62]   547 U.S. 677 (2006).

-20-

concluded, however, that *Empire* did not resemble *Grable*, finding that it "does not fit within the special and small category" described in *Grable*.[63]  The court noted two important distinctions.  First, the dispute in *Grable* centered on action by a federal agency and its compatibility with a federal statute, while the dispute in *Empire* centered on action by non-government persons and entities.[64]  Second, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases,"[65] while Empire's reimbursement claim was "fact-bound and situation-specific."[66]  The court found that the state court where the tort suit was pending was competent to apply federal law to the extent it was required to resolve the amount of the insurer's reimbursement claim.[67]  Finally, the court concluded that the case "cannot be squeezed into the slim category *Grable* exemplifies."[68]

---

[63]     *Empire*, 547 U.S. at 699.

[64]     *Empire*, 547 U.S. at 700.

[65]     *Empire*, 547 U.S. at 700.

[66]     *Empire*, 547 U.S. at 701.

[67]     *Empire*, 547 U.S. at 701.

[68]     *Empire*, 547 U.S. at 701.

In the Fifth Circuit, courts have, for example, held that an alleged violation of the federal HIPAA statute does not confer federal-question jurisdiction;[69] that legal malpractice allegedly committed while representing a client in a federal trademark lawsuit and raising issues of federal intellectual property law does not confer federal-question jurisdiction;[70] that there was no federal-question jurisdiction in a case alleging that the defendant's facility violated federal environmental regulations as well as state and local regulations;[71] that there was no federal question jurisdiction in a suit where the plaintiffs' state law claims required the resolution of issues under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and federal Medicare laws,[72] and that there was no federal-question jurisdiction when a suit raised an issue under the federal Telecommunications Act of 1996.[73]   In fact, it has been noted that "[c]ourts have uniformly held that a reference to federal environmental

---

[69]     *Graves v. Health Express, Inc.*, No. 09-0277, 2009 WL 2835778, *3 (W.D. La. Aug. 31, 2009) ("due to the lack of a private cause of action under HIPAA, the significance of an alleged violation of the federal statute is limited merely to evidence that defendants may have violated a duty of care owed to plaintiff under state tort (or contract) law, provided the alleged violation of the statute was the legal cause of plaintiff's damages.")

[70]     *Singh*, 538 F.3d at 340; *Roof Technical Services, Inc. v. Hill*, 679 F.Supp.2d 749, 753 (N.D. Tex. 2010).

[71]     *MSOF Corp.*, 295 F.3d at 490.

[72]     *Williams v. Edcare Management, Inc.*, No. 1:08-CV-278, 2008 WL 4755744, at *8 (E.D. Tex. Oct., 28, 2008) (holding "Plaintiffs' causes of action arise under state law and do not raise substantial questions of federal law.")

[73]     *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273 (5th Cir. 2010).

statutes, including RCRA, in plaintiffs' negligence claims is insufficient to confer federal question jurisdiction."[74]  It has been held that allegations of OSHA and EPA violations do not automatically confer federal question jurisdiction when the action was not brought to enforce those regulations, there was no special need for federal expertise or uniformity in adjudicating the action, and finding federal-court jurisdiction would undermine the division of labor between state and federal courts.[75]

Reviewing the four critical factors, the undersigned finds that, in this case, the defendants have not carried their burden of proving the existence of federal-question jurisdiction.

### (a)    IS RESOLVING A FEDERAL ISSUE NECESSARY TO THE RESOLUTION OF THE STATE-LAW CLAIM?

On its face, the plaintiff's petition asserts only state-law causes of action.  But the defendants contend that the plaintiff's MAPIL claim cannot be resolved without resolving federal-law questions about Plavix's authorized uses under the federal Food Drug and Cosmetic Act ("FDCA"), the FDA regulations, or the federal Medicaid

---

[74]    *Giles v. Chicago Drum, Inc*., 631 F.Supp.2d 981, 983 (N.D. Ill. 2009) (holding that allegations of RCRA violations were an insufficient basis for federal question jurisdiction), citing *Mulcahey v. Columbia Organic Chemicals Co*., 29 F.3d 148 (4th Cir. 1994); *Polcha v. AT&T Nassau Metals Corp*., 837 F.Supp. 94 (M.D. Pa. 1993) (remanding state law negligence claim to state court, noting that RCRA creates no private cause of action for damages).

[75]    *Glanton v. Harrah's Entertainment, Inc.*, 297 Fed. App'x 685, 687 (9th Cir. 2008).

law.[76]  The core of the plaintiff's complaint is not whether doctors in the State of Louisiana prescribed Plavix to Medicaid recipients for off-label or unauthorized uses of that drug, nor does the complaint center on whether the State of Louisiana paid for Plavix prescriptions to Medicaid beneficiaries for off-label or unauthorized uses of the drug.  Instead, the primary issue raised in the complaint is whether Plavix was marketed through false, fraudulent, and misleading practices.  The petition alleges that the defendants "systematically and deliberately promoted uses of Plavix that are not approved by the FDA . . . *through false and misleading advertising*"[77] by "making *false statements* to physicians and pharmacists," *concealing* the state's formulary policies, training employees to *avoid detection* of their activities,[78] *failing to disclose* efficacy data, *misrepresenting* that data, encouraging physicians to overprescribe Plavix,[79] and *falsely promoting* the drug in various ways.[80]  The essence of the plaintiff's claims is not that the defendants promoted and marketed Plavix in ways that might have violated any federal rules or regulations but that they did so by using false, fraudulent, and misleading practices that violated Louisiana laws.  Determining

---

[76]     Rec. Doc. 20 at 11.

[77]     Rec. Doc. 1-1 at ¶¶ 23-24.

[78]     Rec. Doc. 1-1 at ¶ 26.

[79]     Rec. Doc. 1-1 at ¶ 33..

[80]     Rec. Doc. 1-1 at ¶¶ 39-48 (emphasis added).

whether the defendants are liable will ultimately be based on whether the defendants' conduct was false and misleading as defined by MAPIL or LUTPCPL.  Thus, the allegations of the plaintiff's petition do not demonstrate that the violation of a federal law or regulation is actually disputed.  Similarly, the allegations of the plaintiff's petition do not demonstrate that a federal issue must be resolved in order to determine whether the defendants' actions violated the relevant state statutes.  As noted by another court faced with a similar issue:

> Simply put, it is not the act of causing the submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a false or fraudulent claim.[81]

Thus, the undersigned finds that, in order to prevail in this litigation, the plaintiff will have to prove the elements of its state-law claims but will not necessarily have to prove the violation of federal laws in order to do so.

During oral argument, the defendants argued that whether the federal government would have permitted the State of Louisiana to withhold payment for Plavix prescriptions resulting from marketing practices that violated state law is one of the key disputes in this case.  The defendant's argument was based on a ruling in *In re Vioxx Products Liability Litigation*, MDL No. 1657, with regard to the member

---

[81]     *Pennsylvania v. Eli Lilly & Company, Inc.*, 511 F.Supp.2d 576, 582 (E.D. Pa. 2007).

suit in that multi-district litigation that was brought by the State of Louisiana bearing

Civil Action No. 05-3700.  In that case, the state asserted a LUTPCPL claim, a claim

under a New Jersey consumer protection statute, a claim for unjust enrichment, and

a redhibition claim against Merck and Co., Inc., the manufacturer of Vioxx.  The suit

was originally filed in state court, and the defendant removed it to the Eastern District

of Louisiana, asserting both diversity and federal question jurisdiction.  Three of the

claims were resolved on summary judgment, and the plaintiff's redhibition claim was

ultimately tried, as reflected in the findings of fact and conclusions of law issued by

the court.[82]  Neither that opinion nor the court's ruling on the defendant's motion for

summary judgment[83] contains a statement as to the basis for the court's subject matter

jurisdiction.   Apparently, jurisdiction was not litigated in that action.   In briefing

submitted in a different lawsuit, the State of Louisiana explained that removal in the

*Vioxx* case "was effectuated by agreement not to seek remand."[84]  Consequently, the

---

[82]      *In re Vioxx Products Liability Litigation*, MDL No. 1657, 2010 WL 2649513, *3 (E.D. La. June 29, 2010) ("A bench trial was held in this matter from April 12, 2010, to April 21, 2010.").

[83]      No reported version of the court's ruling on the motion for summary judgment was located.  However, Rec. Doc. 38797 of the suit record is the court's order and reasons for ruling, which granted the motion in part and denied it in part, dismissing all of the plaintiff's claims except the redhibition claim.

[84]      *Caldwell ex rel State of Louisiana v. Abbott Laboratories, Inc. et al.*, Civil Action No. 11-542-BAJ-SCR, Rec. Doc. 8-1 at 21.

State of Louisiana's suit against Merck in the Vioxx litigation provides no helpful analysis with regard to jurisdiction.

In *Vioxx*, the defendant made the same argument articulated by the defendants in this case, suggesting that federal law precludes the State of Louisiana from avoiding paying for prescriptions for unauthorized uses.  In *Vioxx*, that argument was raised with regard to causation of the state's claims.  Ultimately, the court held that the state's redhibition claim failed because the state did not prove causation. "Plaintiff failed to satisfy its burden of proving causation because it did not establish at trial that:  had it known different facts about Vioxx (a) the State could have established an exclusive formulary; (b) and the State would have established such a formulary and excluded Vioxx from it."[85]  In other words, the court held that the state failed to prove that Merck caused its claimed damages because it failed to prove that, under federal law, it could have avoided paying for Vioxx prescriptions.

The undersigned finds the cited Vioxx decision unpersuasive for several reasons.  First, it was not the basis for a ruling on jurisdiction, and this court's subject-matter jurisdiction is the only issue relevant to this motion for remand. Second, although the plaintiff raised a LUTPCPL claim in the Vioxx litigation, and that claim was dismissed on summary judgment, it was not dismissed for failure to

---

[85]     *In re Vioxx*, 2010 WL 2649513, at *21.

prove causation but for a wholly unrelated reason.  Therefore, the *Vioxx* decision's analysis of causation in relation to the argument that the state could not have prevented paying for Vioxx prescriptions provides no guidance in the context of a LUTPCPL claim.

Third, although the *Vioxx* court was persuaded that the issue of whether the state could have avoided paying for prescriptions went to the issue of causation, the undersigned finds that this issue is better characterized in this case as a defense. Here, the state does not have to prove that it could actually have avoided paying for Plavix prescriptions; it only has to prove that Plavix was marketed in ways that violated Louisiana's MAPIL and LUTPCPL statutes.  This is important because a defense cannot form the basis for federal-question jurisdiction.[86]  Thus, the undersigned finds that the defendants' argument that federal law controls whether the State of Louisiana could have avoided paying for Plavix prescriptions that were the result of misleading marketing practices is, at best, a defense that cannot be relied upon as a basis for finding federal-question jurisdiction over this action.

---

[86]    *Elam v. Kansas City Southern Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("[t]hat federal law might provide a defense to a state law cause of action does not create federal question jurisdiction"), citing *Merrell Dow*, 478 U.S. at 808 ("[a] defense that raises a federal question is inadequate to confer federal jurisdiction.").

Fourth, in this lawsuit the plaintiff is seeking to recover civil penalties in addition to damages.  Therefore, even if the plaintiff ultimately cannot prove that it is entitled to recover an amount representing the cost for Plavix prescriptions written in response to misleading marketing, its claim is not automatically foreclosed since it may still be entitled to recover civil penalties.

Fifth, the cited *Vioxx* ruling held that the plaintiff in that lawsuit failed to prove a necessary element of a redhibition claim.  No redhibition claim was asserted in this lawsuit.  By the same token, no MAPIL claim was asserted in the *Vioxx* case.  Consequently, the *Vioxx* ruling does not govern this dispute nor is it persuasive.  Furthermore, a review of the plain language of the MAPIL and LUTPCPL statutes reveals that neither requires proof that the claimant under those laws must prove that he is entitled to recover amounts he was induced to pay because of another's proscribed conduct.

In summary, even if federal law would not have permitted the state to avoid paying for the allegedly fraudulently-induced Plavix prescriptions, and even if federal law would not permit the state to be reimbursed for those prescriptions, the state may still seek damages from the defendants and/or civil penalties.  In other words, a ruling in the state's favor is not necessarily dependent upon a finding that federal law would have allowed the state to avoid paying for certain Plavix prescriptions, but such a

ruling is dependent upon a finding that the defendants' conduct in marketing Plavix violated a state statute.  The undersigned therefore agrees with the plaintiff that it is not necessary to resolve a federal-law question in order to resolve the plaintiff's state-law claims.

### (b)     IS THE FEDERAL ISSUE ACTUALLY DISPUTED?

The defendants have not pointed out the existence of a federal issue that is actually disputed in this case.  This contrasts with the *Grable* decision, in which the proper interpretation of a federal statute had to be decided in order for the plaintiff's claim to be resolved.

### (c)     IS THE FEDERAL ISSUE SUBSTANTIAL?

Not finding an actually disputed federal issue, the undersigned consistently finds that there is no substantial federal issue relevant to the plaintiff's claims.

### (d)     WILL FEDERAL JURISDICTION DISTURB THE BALANCE OF FEDERAL AND STATE JUDICIAL RESPONSIBILITIES?

Even if there were a substantial and actually disputed federal question at issue in this litigation, "the federal issue will ultimately qualify for a federal forum only if

federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."[87]  Three factors preclude the defendants from making such a showing.

First, there is no private right of action in the Federal Medicaid Act,[88] and there is no private cause of action for FDCA violations.[89]  The "absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires."[90]  Finding federal jurisdiction over a state cause of action implicating provisions of the federal Medicaid statute could "attract[] a horde of original filings and removal cases raising other state claims with embedded federal issues."[91]  Therefore, the fact that Congress provided no private right of action in the federal Medicaid act or in the FDCA presents compelling evidence that a finding of federal jurisdiction in this case would not be consistent with Congress's judgment regarding the sound division of labor between the state and federal courts.

---

[87]     *Grable,* 545 U.S. at 313-14.

[88]     *Hood v. AstraZeneca Pharmaceuticals*, LP, 744 F.Supp.2d 590, 601 (N.D. Miss. 2010).

[89]     *Merrell Dow*, 478 U.S. at 810.

[90]     *Grable*, 545 U.S. at 318.

[91]     *Grable*, 545 U.S. at 318.  See, also, *Hood v. AstraZeneca,* 744 F.Supp.2d at 601.

Second, the Federal Medicaid Act requires states to seek recovery of Medicaid funds from liable third parties.[92]  When a federal statute such as the Medicaid statute requires a state to enforce liability against a third party, there is no federal-question jurisdiction.[93]  This also indicates that permitting this court to hear this case would be inconsistent with Congress's judgment regarding the allocation of labor between state and federal courts.

Third, in *Merrell Dow*, the United States Supreme Court stated that a complaint that alleges violations of the FDCA as an element of a state cause of action does not state a claim within a federal court's arising-under jurisdiction.[94]  *Merrell Dow* remains good law.  Accordingly, were this Court to find that there is federal-question jurisdiction over this action because the FDCA or the Medicaid statute is implicated, that finding would be inconsistent with Congress's judgment regarding the "sound division of labor between state and federal courts."[95]

---

[92]  *Hood v. AstraZeneca*, 744 F.Supp.2d at 601.

[93]  See, e.g., *South Carolina ex rel. Wilson v. GlaxoSmithKline, LLC*, No. 1:08cv166-SA-JAD, 2011 WL 3678166, at *5 (D.S.C. July 22, 2011); *Hood v. AstraZeneca*, 744 F.Supp.2d at 601; *Hood v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 1:08CV166-SA-JAD, 2009 WL 561575, at *3 (N.D. Miss. Mar. 4, 2009), all of which cite *New York v. Lutheran Center for the Aging, Inc.*, 957 F.Supp. 393, 403 (E.D.N.Y. 1997) ("Where a federal statute such as Medicaid requires a state to enforce liability against a third party but does not provide the ground for that liability, federal question jurisdiction will not lie.")

[94]  *Merrell Dow*, 478 U.S. at 817.

[95]  *Grable*, 545 U.S. at 313.

The undersigned finds that "[t]here is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the federal statutes involved here, namely, the FDCA and . . . the federal legislation establishing the Medicaid program."[96]  The undersigned further finds that the issues to be decided in this case are grounded in state law and are "fact-bound and situation-specific."  The undersigned further finds that the state court where this suit was originally filed is competent to apply federal law to the extent, if any, it is required to resolve the plaintiff's claims.  These findings, coupled with the factors cited above, persuade the undersigned that finding that this court has federal-question jurisdiction over this action is not consistent with congressional judgment about the roles of state and federal courts.

Finally, the plaintiff directed the Court's attention to numerous cases presenting similar claims against pharmaceutical companies and holding that the actions should be remanded.[97]  The undersigned is persuaded that a majority of courts have found federal jurisdiction lacking under the circumstances presented here, and

---

[96]       *Pennsylvania v. Eli Lilly*, 511 F.Supp.2d at 585.

[97]       A few of the more persuasive decisions are Magistrate Judge Riedlinger's report and recommendation in *Caldwell ex rel State of Louisiana v. Abbott Laboratories, Inc.*, Civil Action No. 11-542-BAJ-SCR, Mar. 5, 2012; *Hood v. AstraZeneca Pharmaceuticals*, LP, 744 F.Supp.2d 590 (N.D. Miss. 2010); *Hood v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, No. 1:08CV166-SA-JAD, 2009 WL 561575 (N.D. Miss. Mar. 4, 2009); and *Pennsylvania v. Eli Lilly & Company, Inc.*, 511 F.Supp.2d 576 (E.D. Pa. 2007).

-33-

is further persuaded that those decisions represent the better course of action in this case.

## CONCLUSION

The defendants have the burden of establishing the existence of federal court jurisdiction.  The plaintiff's petition alleges only state-law claims, and the defendants failed to demonstrate that the petition alleges claims involving actually disputed and substantial federal-law issues that a federal court may entertain without disturbing the congressionally-approved balance of federal and state judicial responsibilities. Accordingly, the defendants have failed to satisfy their burden of establishing federal question jurisdiction.  The defendants also failed to prove that this is a class action or a mass action as those terms are defined in CAFA.  Accordingly, CAFA does not vest the court with jurisdiction over this action.  Finally, the defendants failed to prove that the parties are diverse in citizenship.  Accordingly, this action does not fall within the court's diversity jurisdiction.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that the plaintiff's motion to remand (Rec. Doc. 7) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 12th day of June 2012.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE